CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/26/2017
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| MICHAEL D. HARWLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 6:16cv32 |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Michael D. Harwley ("Harwley"), proceeding pro se, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act").[2] 42 U.S.C. §§ 401–433, 1381–1383f. Harwley alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to give adequate weight to the opinions of John O. Marsh, M.D. and James W. Worth, Ed.D; (2) misrepresenting his global assessment of functioning ("GAF") score; and (3) improperly assessing his credibility. Harwley also alleges that new evidence merits remand. However, I conclude that substantial evidence supports the Commissioner's decision in all

---

[1] Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, I substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit.

[2] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

respects. Accordingly, I **DENY** Harwley's Motion for Summary Judgment (Dkt. No. 13) and **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. No. 14).[3]

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Harwley failed to demonstrate that he was disabled under the Act.[4] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Harwley filed for SSI and DIB on July 5, 2012, claiming that his disability began on August 30, 2011, due to manic depressive, bipolar, severe anxiety, panic, and attention deficit

---

[3] James Everette Pool, Harwley's stepfather, has filed what Pool termed a "motion to intervene" in this case. Dkt. No. 16. However, the motion does not satisfactorily explain how Pool has a claim that shares a common question of law or fact with Harwley, as required to intervene under Federal Rule of Civil Procedure 24(b)(1)(B). Instead, it appears that Pool simply seeks to file a supporting memorandum on Harwley's behalf, asking the court to determine that the ALJ's decision was in error, and either remand or reverse and award disability. A party has a right to litigate his *own* claims, but nonlawyers are typically not permitted to represent others in court. See Brown v. Ortho Diagnostic Sys., Inc., 868 F. Supp. 168, 172 (E.D. Va. 1994) (noting that "[t]he near uniform proscription on non-lawyers representing others in court" is based on the policy considerations of the state's interest in regulating the practice of law, and what is at stake for the litigant, including the finality of the adjudication of rights in question). Further, 42 U.S.C. §406(a), which permits non-attorneys to represent claimants in social security proceedings, applies only to administrative proceedings before the Commissioner, and not to proceedings before the courts. See Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998). Thus, I deny Pool's motion to intervene.

[4] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

hyperactivity ("ADHD") disorders.[5] R. 12, 227, 249. Harwley's date last insured was September 30, 2012.[6] R. 12. The state agency denied Harwley's applications at the initial and reconsideration levels of administrative review. R. 69–80, 81–92, 95–109, 111–25. On January 2, 2015, ALJ Brian B. Rippel held a hearing to consider Harwley's claims for DIB and SSI. R. 38–68. Harwley was represented by counsel at the hearing; however, he is currently proceeding pro se. The hearing also included testimony from vocational expert Robert Jackson.

On February 12, 2015, the ALJ entered his decision analyzing Harwley's claims under the familiar five-step process[7] and denying his claim for benefits. R. 12–31. The ALJ found that Harwley was insured at the time of the alleged disability onset and that he suffered from the severe impairments of degenerative disc disease associated with arthropathies, osteodiscitis, organic brain syndrome, affective disorder, anxiety disorder, ADHD, and substance addiction disorder in remission.[8] R. 14. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 15–16. The ALJ concluded that Harwley retained the residual functional capacity ("RFC") to perform a limited

---

[5] Harwley was born on April 14, 1970, and was 41years old on his alleged onset date, making him a younger individual under the Social Security Act. R. 29.

[6] Harwley must show that his disability began on or before September 30, 2012 and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[7] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[8] The ALJ also noted that, though Harwley had complained of seizures in the past, seizures were not a medically determinable impairment because the medical record did not establish a seizure disorder. R. 15.

3

range of light work.[9] R. 16. Specifically, the ALJ found that Harwley is limited to simple, routine, repetitive tasks and entry-level unskilled work involving only occasional interaction with others, including the public, co-workers (including tandem tasks), and supervisors. The ALJ also determined Harwley requires a work setting with fewer than ten coworkers in his workspace, and is limited to low-stress work, with no more than occasional independent decision-making and occasional changes in the workplace setting. Id.

The ALJ determined that Harwley was not capable of performing his past relevant work as crew chief (cell tower construction – tower erector supervisor) and self-employed carpenter. R. 29. However, the ALJ found that Harwley could perform jobs that exist in significant numbers in the national economy, such as cleaner, inspector/grader, assembler, and machine operator. R. 30. Thus, the ALJ concluded that Harwley was not disabled. R. 31. Harwley appealed the ALJ's decision and the Appeals Council denied his request for review on April 27, 2016. R. 1–4.

## **ANALYSIS**

Harwley argues that the ALJ should have found him disabled at step five, essentially an argument that the ALJ's disability determination was not supported by substantial evidence.[10] Specifically, Harwley alleges that the ALJ erred by: (1) failing to give adequate weight to the opinions of Drs. Marsh and Worth; (2) erroneously listing his global assessment of functioning ("GAF") score as 55; and (3) giving improper weight to his criminal history and improperly assessing his credibility. Harwley also alleges that new evidence merits remand.

---

[9] The ALJ found that Harwley can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours in an eight-hour day, and sit up to six hours in an eight-hour day. R. 16.

[10] As a pro se litigant, Harwley is entitled to a liberal construction of his pleadings. Miller v. Barnhart, 64 F. App'x 858, 859 (4th Cir. 2003)

4

### A. Relevant Medical History

Harwley presented to the emergency room on July 27, 2011 complaining of back and neck pain after falling down a few stairs.[11] R. 366. Imaging studies including x-rays and a CT scan of his head were negative for fractures, but did show some degenerative spondylosis and disc narrowing in the cervical and lumbar spine. R. 369–73. Harwley followed up with his primary care physician Dr. Marsh in August 2011, and Dr. Marsh indicated normal physical exam and CT scan. R. 388. Harwley followed up with Dr. Marsh again in July 2012, complaining of memory issues, headaches, and dizziness, and was referred to the University of Virginia ("UVA") neurology department for "continued symptoms post concussion."[12] R. 379–80.

Harwley presented to Jeffrey Ratliff, M.D. at the UVA neurology department in August 2012, complaining of difficulty completing tasks, headaches, loss of consciousness, vertigo, and emotional problems, following his head injury in July 2011. R. 395–96. Dr. Ratliff noted that his neurologic exam showed mild attention and memory impairments, but was otherwise unremarkable, and assessed post-concussive syndrome, likely provoked by his July 2011 head injury. R. 399. An MRI of his brain on August 30, 2012 showed no abnormalities. R. 599. Harwley returned to the UVA neurology department in October 2012, complaining of continued problems with concentration, headaches, and fatigue, but somewhat improved mood and temper. R. 562. In a March 2013 follow-up appointment, Harwley complained of continued headaches, as well as "emotional lability and short temper." R. 622. In November 2012, Harwley underwent

---

[11] Though not included in his emergency room record, Harwley later claimed that he had suffered two head traumas in July 2011, the first sustained when at work constructing a cell-phone tower, and the second when he fell down a few stairs. R. 561.

[12] Dr. Marsh ultimately discharged Harwley from his practice following a positive drug screen. R. 959.

a neurocognitive assessment that showed intellectual abilities in the average range, with variability in certain functions from mildly impaired to high average. R. 619.

Harwley was hospitalized for cervical osteodiscitis in June 2013, which his doctors associated with a history of intravenous drug abuse. R. 417. Upon discharge, providers cautioned Harwley not to use his PICC line to inject drugs due to risk of "sepsis and death" and though Harwley denied illegal drug use, he responded "well, if I inject myself, I'll be sure to not use the PICC line." R. 422.

Harwley began therapy sessions at Augusta Psychological Associates in September 2013, with complaints including depression, anxiety, memory lapses, and anger control issues. R. 755. He was diagnosed with major depressive disorder, single episode, generalized anxiety disorder, and somatization disorder and a GAF score of 55.[13] R. 761. Harwley had regular treatment at Augusta Psychological Associates until August 2014, continuing to complain of depression, and "cognitive/somatic complaints." R. 989-1061.

In October 2014, at the request of Harwley's stepfather, Dr. Worth performed a one-time psychological evaluation "for use in the process of seeking disability benefits." R. 1067-1073. Diagnostic impression included bipolar disorder, ADHD, and panic disorder with agoraphobia. R. 1073. Dr. Worth assessed a GAF score of 39. Id. Dr. Worth concluded that Harwley was not capable of "completing an ordinary work week, performing his duties consistently, or maintaining regular work attendance." Id.

Also in October 2014, Harwley underwent another neuropsychological assessment at UVA, regarding reported cognitive changes associated with Harwley's July 2011 concussion.

---

[13] The GAF Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51–60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV") 32 (4th ed. 1994).

R. 1075–81. Apparently, Harwley had complained of worsening symptoms, particularly his memory issues, since the 2012 assessment. R. 1076. The examiner noted that the results of the test should be viewed with caution, as involving less than maximum effort. Further, the examiner generally noted that Harwley's intellectual abilities compared to the 2012 evaluation remained stable and concluded that his cognitive problems following his 2011 head injury should have resolved. R. 1080.

### B. Opinions of Treating Physician Dr. Marsh and Examiner Dr. Worth

Harwley argues that the ALJ erred by rejecting the opinions of, Dr. Marsh, his treating physician, and Dr. Worth, who performed a psychological evaluation, and asserts that the ALJ did not adequately explain why he did not give these opinions greater weight. In a letter dated February 27, 2013, Dr. Marsh wrote, "In view of [Harwley's] medical situation with the head injury, concussion, and problems with thought processes, and the continued need for follow-up, it is my medical opinion that he is unable to work at this point in time." R. 845. In 2014, Dr. Marsh filled out forms from Harwley's attorney indicating that Harwley had been unable to work since August 2011. R. 751, 1065. In October 2014, following a psychological evaluation, Dr. Worth found that Harwley was not "capable of completing an ordinary work week, performing his duties consistently, or maintaining regular work attendance." R. 1073.

The ultimate decision on whether Harwley meets the statutory definition for disability is always reserved to the Commissioner, and thus Dr. Marsh's and Dr. Worth's opinions on Harwley's disability was entitled to no special weight. See Morgan v. Barnhart, 142 F. App'x 716, 722 (4th Cir. 2005). However, the regulations require that an ALJ give the opinion of a treating source, such as Dr. Marsh, controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with

7

the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

Conversely, one-time evaluators such as Dr. Worth do not constitute treating sources under the regulations, and thus their opinions generally do not warrant controlling weight. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Carter v. Colvin, No. 1:15CV00981, 2016 WL 4487778, at *11 (M.D.N.C. Aug. 25, 2016). Still, the ALJ must nevertheless evaluate these opinions using the factors outlined in the regulations, and expressly indicate and explain the weight he or she accords to such opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Here, the ALJ appropriately considered all these factors and the record, in determining the weight to give to the opinions of Dr. Marsh and Dr. Worth, and adequately explained why he did not adopt their finding that Harwley was unable to work. The ALJ gave Dr. Marsh's "conclusions of disability" very little weight as such conclusions were inconsistent with the other evidence of record. R. 28. Further, regarding both Drs. Worth and Marsh, the ALJ found that

"opinions that [Harwley] is precluded from working are entitled to little, if any weight, since they are not supported by medical signs and laboratory findings or adequate explanations and are inconsistent with the record as a whole." Id. Specifically, the ALJ noted that Harwley's physical examinations were generally within normal limits until he was diagnosed with osteodiscitis in June 2013, which doctors associated with his history of intravenous drug abuse. R. 26. The ALJ also emphasized that the CT and MRI scans performed following Harwley's July 2011 fall were normal, spinal x-rays showed only mild degenerative changes and mental testing showed no more than mild impairment to high average functioning. R. 26, 28.

In contrast, the ALJ gave great weight to the opinions of the state agency physician and state agency psychologist at the reconsideration level who determined that Harwley had the RFC to perform light work, finding that their opinions were "substantiated by the record as a whole." R. 27. Thus, the ALJ considered the opinions of Drs. Marsh and Worth, together with all of the evidence in the record, and determined that Harwley was capable of a limited range of light work. This is the ALJ's job: to review the medical evidence of record, weigh the medical opinions, and determine an RFC that represents Harwley's functional capacity. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision to give the opinions of Drs. Marsh and Worth little weight.

**C. GAF Score**

Harwley also complains that the ALJ erroneously stated that his GAF score was 55, when it was actually 39. Pl.'s Br. at 3–4, Dkt. No. 13. However, the ALJ correctly noted in his opinion that in counseling visits to August Psychological Associates between September 2013 and August 2014 Harwley was assigned a GAF score of 55. R. 989-1061. Harwley appears to be referring to Dr. Worth's assessment of a GAF score of 39 in the October 2014 psychological

evaluation. While the ALJ did not specifically reference Dr. Worth's assessment of a GAF score of 39, the ALJ did discuss Dr. Worth's psychological evaluation, specifically noting that he saw Harwley for a "one-time evaluation" and giving Dr. Worth's opinion that Harwley could not work "little, if any, weight." R. 28. In short, as set out in the previous section, the ALJ adequately explained the weigh he gave to Dr. Worth's opinion. Further, an ALJ is not required to review every GAF score in the record, especially where, as is the case here, the ALJ fully evaluated the records and treatment notes. See Paris v. Colvin, No. 7:12-CV-00596, 2014 WL 534057, at *6 (W.D. Va. Feb. 10, 2014); Dawson v. Barnhart, No. CIV.A.7:05CV00314, 2006 WL 982005, at *2 (W.D. Va. Apr. 11, 2006) ("A GAF score may assist in the ALJ's determination of a claimant's RFC, but is not essential to such a determination.") (citations omitted).

### D. Criminal History / Credibility

Harwley argues that the ALJ gave improper weight to his criminal history, writing that his criminal record should be "immaterial." Pl.'s Br. at 6. However, there is no indication in the opinion that the ALJ declined to find that Harwley was disabled because of his past felony conviction. Further, to the extent that Harwley's argument could be construed as a claim that the ALJ failed to properly evaluate his credibility, this also fails. The ALJ properly considered Harwley's testimony and subjective complaints regarding his limitations, but found that he was not entirely credible. [14] R. 26–27.

---

[14] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3P, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Harwley's subjective allegations of his disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the Record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P (superseded by SSR 16-3P, (March 28, 2016)).

In this case, the ALJ found that Harwley's statements regarding the severity of his limitations were not wholly credible because they were not supported by objective medical evidence, his treatment history, and the overall treatment record. R. 26-27. The ALJ's opinion includes a detailed consideration of Harwley's medical history along with Harwley's own allegations, after which the ALJ concluded that Harwley's statements concerning his impairment "are unreliable at best and deliberately misleading at worst." R. 27. The ALJ outlined his reasons for this determination, including that Harwley's allegations are not consistent with the minimal findings on x-ray, CT, MRI, and physical examinations, as well as the results of neuropsychiatric testing characterizing him within the "mildly impaired to average range." R. 26. The ALJ also noted:

---

Here, SSR 16-3P was issued after the ALJ's consideration of Harwley's claim, and both the ALJ's opinion and the Commissioner's brief speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility. See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking").

However, I note that the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider Harwley's report of his own symptoms against the backdrop of the entire case record; in SSR 16-3, this resulted in a "credibility" analysis, in SSR 16-3, this allows the adjudicator to evaluate "consistency."

> [Harwley] has repeatedly engaged in a pattern of inconsistent statements and patent exaggeration of clinical results as relayed to various practitioners. At the hearing, he reported that he had engaged in no drug abuse since 2000, yet openly reported during neuopsychiatric testing that he had not stopped using methamphetamines until 2012, later lamenting that he had been so free with his admissions when the clinician concluded that syncopal episodes and cognitive deficits were likely related to drug abuse and/or withdrawal symptoms.

R. 26, 46, 617. Another example of an inaccurate statement is Harwley's report to Dr. Marsh in April 2013 that he had been diagnosed with an acute brain hemorrhage following his July 2011 fall, when he was actually diagnosed with neck and back pain and released in stable condition. R. 367, 571.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

After a review of the entire record, I find that substantial evidence exists to support the ALJ's determination that Harwley's testimony is not entirely credible, and that Harwley is capable of performing work at the level stated in the ALJ's opinion.

**E. Exhibits Attached to Harwley's Motion**

Harwley attached certain documents to his motion for summary judgment which were not already in the record, specifically, the Commissioner's response to a congressional inquiry concerning his case (Ex. 9), tax return information from 2014 (Ex. 10), and an unsigned letter of resignation dated September 7, 2011 (Ex. 11).[15] I construe his brief to advance an argument that his case should be remanded to the Commissioner in light of the additional evidence, however, I find that that Harwley has not shown grounds for remand. A reviewing court may remand a case to the Commissioner on the basis of new evidence if four prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time the application(s) was first filed; (2) the evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must make at least a general showing of the nature of the new evidence to the reviewing court. Miller v. Barnhart, 64 F. App'x 858, 859–60 (4th Cir. 2003) (citing Borders v. Heckler, 777 F.2d 954, 955 (4th Cir.1985)).

Harwley has not shown that the new evidence is material, because it would not reasonably have changed the Commissioner's decision had it been before her. See Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir.1991)) (noting that in order for new evidence to be material, there must be "a reasonable possibility that the new evidence would have changed the outcome."). The documents are not medical records, and none of the

---

[15] Harwley also attached evidence to his motion for summary judgment that was already in the administrative record: (1) March 27, 2015 letter to Appeals Council (Pl's. Br. Ex. 12, R. 362); (2) information regarding yearly earnings (Pl's. Br. Ex. 13, R. 239–44); and (3) June 20, 2013 progress note (Pl's. Br. Ex. 14, R. 962). However, Harwley fails to show any grounds for remand based on these documents. Lastly, he attached a letter he sent to the Appeals Council, which he complains was not made part of the record. However, as noted by Harwley, the letter lists five items which were already included in the administrative record, and Harwley has not shown that the failure to include the letter in the record harmed his claim in any way.

documents would reasonably have changed the Commissioner's determination that Harwley is not disabled. Further, he has not provided any good cause for his failure to submit the evidence when his claim was before the Commissioner.

Finally, Harwley's complaint that the "Appeals Council did not elaborate on why they denied [my] claim" is not well taken. Pl's. Br. at 2. In Meyer v. Astrue, 662 F.3d 700, 705–06 (4th Cir. 2011), the Fourth Circuit held that the "the regulations do not require the Appeals Council to articulate its rationale for denying a request for review."

## **CONCLUSION**

Accordingly, Harwley's Motion for Summary Judgment is **DENIED** and the Commissioner's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED** from the court's docket.

Entered: September 26, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge